UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELLENBETH WACHS,

                                 Case No:

              Plaintiff,            Judge:

v.

GRADY JUDD, in his official capacity as
Sheriff of Polk County, Florida,
and DOES 1-10,

              Defendants.
_____/

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff ELLENBETH WACHS ("Plaintiff" or "Wachs"), pursuant to 42 U.S.C § 1983, 28 U.S.C. §§ 2201 and 2202, sues Defendants, GRADY JUDD ("Judd") and DOES 1-10 (hereinafter referred to collectively as "Doe Defendants") and in support states:

## INTRODUCTION

1.     This is a civil rights action brought by the Plaintiff resulting from Defendants' failure to respect the Separation of Church and State, and their willful participation in repeated campaigns against Plaintiff in retaliation for her beliefs in Human Secularism, colloquially known as "Atheism."  Plaintiff seeks to stop Defendant Judd's campaign of bad faith retaliation by preventing the initiation of any new investigations, arrests, citations or complaints against Plaintiff solely as a result of Plaintiff's assertion of a non-religious, Atheist viewpoint in the

predominantly Christian-oriented Polk County, Florida.[1]  Defendants' conduct has been undertaken in violation of the Establishment Clause, Free Exercise Clause and Free Speech rights under the First Amendment, and the rights to Due Process and Equal Protection under the Fourteenth Amendment.  Plaintiff further seeks to preliminarily and permanently enjoin Defendants from continuing to conspire with each other for the purpose of causing irreparable injuries to Plaintiff's federal constitutional rights.

## JURISDICTION

2.      This is an action properly invoking this Court's original "Federal Question" jurisdiction under 28 U.S.C. § 1331, since the matters in controversy arise under the U.S. Constitution and laws of the United States.

3.      The jurisdiction of this Court is properly invoked under 28 U.S.C. § 1331, 1343(A)(3) and 42 U.S.C. § 1983.  This action arises under the First and Fourteenth Amendments to the United States Constitution and the aforementioned laws of the United States to redress the deprivation of Plaintiff's rights, immunities, protections, and privileges (as guaranteed by the United States Constitution) by Defendants acting under color of state law, statute, regulation, customs, and/or usage.

## PARTIES

4.      Plaintiff Wachs is a *sui juris* resident of the City of Lakeland, situated in Polk County, Florida, and is the Legal Director of the Atheists of Florida, a group which advocates a secular belief system supporting the Separation of Church and State as mandated by the United States Constitution, and well-established interpretative case law.  Plaintiff is a retired attorney

---

[1] Plaintiff wishes to make clear that she is not "anti-Christian," nor does she seek to prevent her fellow citizens from practicing their religious beliefs in a constitutional manner.  Plaintiff's own beliefs, including her speech advocating for those beliefs, have been censored, and Plaintiff is seeking to end the campaign of censorship and retaliation against her while also ensuring that the beliefs of a single group do not ostracize and exclude others from the political process in an unconstitutional manner.

from the State of Pennsylvania, who now resides in Polk County, Florida.

5.      At all times material hereto, Defendant Judd was the duly elected Sheriff of Polk County, Florida.   Florida sheriffs are independent constitutional officers who oversee law enforcement in a given county.  Defendant Judd was, at all material times, the final policy maker with respect to law enforcement efforts and decision-making within his jurisdiction.  As such, Defendant Judd had the actual supervision, control, authority, and responsibility over enforcement of the laws of the State of Florida, and the obligation to ensure the protection of the constitutional rights and liberties of all citizens and residents of Polk County, Florida, including Plaintiff. Defendant Judd further had, at all material times, the authority over; 1) whether and when to initiate or pursue criminal investigations of Plaintiff; 2) whether and when to effectuate custodial arrests of Plaintiff; and 3) whether and when to search Plaintiff's properties (whether in reliance on search warrants or otherwise) and seize any and all contents seized from said properties.

6.      Defendant Judd is charged with a duty to exercise his discretion to investigate violations of the law in a good faith and constitutional manner, so as not to discourage, punish, or retaliate against citizens for their beliefs and/or for exercising their constitutional rights.

7.      At all times material hereto, Doe Defendants were acting under color of state law, and while acting under color of state law, either on their own, or in joint participation with Defendant Judd and/or Doe Defendants, deprived or conspired to deprive Plaintiff of her constitutional rights through their involvement in the investigations and pending criminal prosecutions described below.

8.      Unless otherwise noted herein, all references to Defendants shall include their agents, employees, officials, and all others acting under express or apparent authority of

Defendants.

9.      Defendants are sued in their official capacities solely for declaratory and prospective injunctive relief.

**FACTUAL ALLEGATIONS**

**A.  Christian Pervasiveness in Polk County, Florida**

10.     This case arises out of a pattern of malicious harassment and discriminatory persecution perpetrated by Defendants upon Plaintiff based on her Atheist beliefs, the content of her speech, and her legal actions/investigations with respect to Defendants, all of which have motivated Defendants to use their respective positions of governmental power in an effort to discourage her from continuing to openly espouse an Atheist viewpoint within Polk County, Florida.

11.     Defendants' past and present conduct has been recognized throughout the United States as an effort to create and operate under their own set of rules purportedly dictated by perceived, ultra-conservative societal mores in Polk County.  Defendants' efforts at maintaining Polk County's pervasive religiosity have attracted national media attention on numerous occasions.  For example, over the course of his tenure as Sheriff, Defendant Judd has conspired to deprive residents of Polk County, Florida of their right to access virtually any form of erotic speech or entertainment through a concerted effort to intimidate any purveyor of such entertainment through over-zealous law enforcement efforts, including routine use or threats of serious racketeering charges against businesses disseminating the disfavored speech (and their landlords) in exchange for agreements to censor their speech-related activities.[2]  Defendant Judd has even gone to the lengths of investigating website operators and convenience store clerks who

---

[2] A summary of these efforts can be found in the following recently-published article: Jeff Gore, "Church and State: Polk County Sheriff Grady Judd's mission from God to eliminate obscenity knows no bounds," *OrlandoWeekly.com*, Feb. 24, 2011.  Available at http://orlandoweekly.com/news/church-and-state-1.1109454

distribute common forms of adult-oriented media in their jurisdiction.[3]

12.     More recently, Defendant Judd initiated an unjustified, unwarranted obscenity investigation and manufactured jurisdiction over a Colorado resident with no ties to Polk County for publishing a controversial book that had become the subject of national media attention, by convincing the writer to send his last copy to investigators in response to their request.[4]   In a recent effort to favor religion using government resources, Defendant Judd removed basketball hoops from Polk County jails and donated them to churches.   As noted *supra*, Plaintiff Wachs investigated this questionable activity through a series of public records requests, thus drawing the ire of Defendant Judd.   Polk County has also become infamous for its School Board members' desire to see creationist "intelligent design" taught in Polk County schools.   Christian prayer rituals are routinely held before government meetings in Polk County.   Polk County's conservative and religious fabric is widely recognized in Central Florida, and elsewhere. Defendants' willful failure to ignore the Separation of Church and State required by the Constitution is often recognized and criticized.[5]

13.     Perhaps more troubling than the events that make the national news are the less publicized but equally dictatorial actions taken by government officials, usually with the involvement, support, or approval of Defendant Judd.   These actions include:

- Defendant Judd quoting Biblical scripture in the official Polk County Sheriff's Office ("PCSO") newsletter, wherein Judd "themed" his 2007-2008 budget presentation as

---

[3] *See State of Florida v. Tammy Robinson*, Case No. CF99-01463 A-XX (Fla. 10th Cir. Ct., filed March 5, 1999); *State of Florida v. Christopher Wilson*, Case No. CF05-007738-XX (Fla. 10th Cir. Ct., filed Oct. 7, 2005); *see also* PCSO press release relating to prosecution of convenience store clerks; http://www.polksheriff.org/NewsRoom/News%20Releases/Pages/FourChargedwithWholesalePromotionofObscene Material.aspx

[4] *See* http://www.polksheriff.org/NewsRoom/News%20Releases/Pages/12202010.aspx

[5] *See* n.2, *supra*; *see also* Michael Kruse, "Polk Sheriff Grady Judd makes his name on moral outrage," *Tampabay.com*, Feb. 6, 2011.   Available at http://www.tampabay.com/news/publicsafety/polk-sheriff-grady-judd-makes-his-name-on-moral-outrage/1149570

"Standing in the Gap" because, as expressed in Ezekiel 22:30, "God was seeking someone who would 'stand in the gap' between good and evil for the people.  In today's world, our deputies – both law enforcement and detention – are standing in the gap to protect our communities from law breakers."  Essentially, Defendant Judd called Polk County law enforcement officers Biblical judges of that which is good and that which is evil;

- Gospel singers providing the entertainment at PCSO-hosted events – events which were held at Baptist churches;

- "Recruits" from the Polk County Juvenile Boot Camp being baptized at the First Baptist Church in Lakeland and prison inmates being "introduced to Christian principles" as part of a program between the PCSO and the Trinity Christian Center;

- The PCSO's official newsletter touting prisoner baptism statistics under its "church adoption program" and "Faith-based dorms" initiative;

- The PCSO newsletter containing a feature story on "Bikes for Christ;"

- The PCSO's official "Chaplaincy Program," whose mission is to comfort, assist, and listen to Polk County citizens, being entirely made up of Christian ministers; and

- Participating in the effort by a group known as "Polk Under Prayer," which "baptizes" intersections leading into Polk County with holy oil, in the name of Jesus Christ, and prays that the non-believers submit to the will of Christ or become "incarcerated."

Numerous similar examples of Defendant Judd's blurring the constitutional line between Church and State exist.

14.    While the above-listed actions may seem innocent in isolation, they point to an

obvious and deeply-ingrained tradition of Christianity within the agencies and officials overseen by Defendant Judd.   The Atheist, Jew, Muslim, or other non-Christian who reads Defendant Judd's newsletters receives a clear message – "you are not one of us."   When coupled with statements from Defendant Judd that he does not "see the atheists out there doing a dad-gum thing for this community,"[6] it becomes clear that non-Christian viewpoints – and particularly Atheist viewpoints - are unwelcome in Defendants' home town.

**B.  Expressive Activities by Plaintiff and the Atheists of Florida**

15.     Much, if not all, of the Defendants' conduct in this case concerns Plaintiff's involvement with the Atheists of Florida, a Florida non-profit corporation.   The Atheists of Florida is a member-run organization that seeks to educate the public about Atheist ideas while defending "freedom of thought and expression as well as the complete and absolute separation of state and church as guaranteed in the First Amendment of the United States Constitution."   Additional      information      about      the      organization      may      be      found      at http://atheistsofflorida.org/purpose.htm.   Plaintiff Wachs has participated as a party plaintiff in litigation initiated by the Atheists of Florida.

16.     On or about December 23, 2010, in Bartow, Florida, a municipality located within Polk County, Defendant Judd conducted a press event to announce that he would be removing all basketball rims, posts, and nets from the exercise yards at Polk County jail facilities and donating the equipment to eight Polk County churches.   News videos of the event showed inmates and Sheriff's personnel removing a basketball goal from jail property and thereafter installing it at the Turning Point Christian Church located near the jail.   In televised comments delivered at the church, Defendant Judd connected the December 23rd relocation event to a Christmas theme,

---

[6] Jeff Weiner, "Judd on atheist group controversy: 'We don't discriminate against churches'," *OrlandoSentinel.com,* Dec. 30, 2010.   Available at: http://articles.orlandosentinel.com/2010-12-30/news/os-grady-judd-responds-atheist-compla20101230_1_secular-groups-church-and-state-atheists

stating: "The inmates may think I'm the Grinch, but the kids at this church think I'm Santa Claus."

17.     Aware of (and apparently mocking) the Atheists of Florida's concern about religious favoritism with the basketball equipment, Defendant Judd has been quoted as saying that "If there is no God, why do they care?"

18.     On or about December 28, 2010, Atheists of Florida delivered a letter to Sheriff Judd requesting that he cease and desist the transfer of basketball equipment from the county's jail facilities to the churches.  The letter was signed by Plaintiff Wachs, a retired attorney who was admitted to the Pennsylvania bar in December 1993, and included the suffix "Esq" next to her name.

19.     On or about January 4, 2011, Atheists of Florida sent a public records request to the Freedom of Information Officer with the Polk County Records Management Office seeking information related to the recent transfer of jail basketball equipment to the area churches.  The letter was signed by Plaintiff Wachs and included the suffix "Esq" next to her name.

20.     On or about January 21, 2011, Plaintiff went to Defendant Judd's office in Bartow to retrieve the requested records from the Sheriff's Office Attorney, Anne Gibson.  Plaintiff paid a sixty-seven dollar ($67.00) charge from her personal bank account, which was later reimbursed with an Atheists of Florida check for the same amount.  This check would later be seized by Defendant Judd and mischaracterized in criminal discovery disclosures as a "check[] to Ms. Wachs for legal services" in the UPL Action brought against Plaintiff Wachs as described below.

21.     On or about February 16, 2011, the Atheists of Florida requested additional information from Defendant Judd regarding the transfer of jail basketball equipment to area churches. The new request asked for clarifications and additional information regarding

documents submitted in January by Defendant Judd in response to the organization's January 4, 2011 inquiry.

### C.  The First Retaliatory Arrest

22.     On or about March 3, 2011, Defendant Judd, in consort with Doe Defendants, without probable cause, and in retaliation for her beliefs and expressive activities referenced above, coordinated the custodial arrest of Plaintiff on charges of "misrepresent[ing] [her]self as qualified to practice law" purportedly in violation of § 454.23 *Fla. Stat.* (2010) ("the UPL Action").   Approximately twenty (20) law enforcement personnel, dressed in SWAT-style paramilitary attire, and other authorities in civilian attire, arrived at her home to conduct a broad search and effectuate the arrest.   They arrived in over one dozen unmarked vehicles including one crime lab truck.   Deputies placed Plaintiff in handcuffs, served her with a search warrant, and transported her to the Polk County jail.   Upon information and belief, this unnecessarily dramatic show of force was intended by Defendants, acting alone or in consort with each other, to send a message to Plaintiff that her involvement with the Atheists of Florida and challenges to assertedly unconstitutional religious practices in Polk County were unwelcome and would no longer be tolerated.

23.     Defendant Judd's agents searched the Plaintiff's home for several hours, confiscating computers, a cell phone, documents, and other items.   Defendant Judd specifically seized privileged communications with Plaintiff's role as a party in litigation brought by the Atheists of Florida, notes relating to her deposition in that case, and information Plaintiff uncovered during her investigation of potential unconstitutional activities undertaken by Defendant Judd in using government funds to purchase items for religious institutions.   In the course of the search, Plaintiff's home was ransacked as law enforcement searched for evidence

of any documents authored by Plaintiff "purporting to instruct on or explain legal principles."[7]  A copy of the documents relating to the Search Warrant and subsequent arrest of Plaintiff Wachs are attached as Composite Exhibit A.

24.     Notably, the Search Warrant application limited the entire search to documents authored or received by Plaintiff in connection with the Atheists of Florida, Inc.  Also, despite the heavy reliance that the supporting Complaint Affidavits placed on Plaintiff's alleged use of "Esq" in correspondence, the Search Warrant application did not include any description of items whereby Plaintiff used "Esq" on documents.  As stated, the Search Warrant application sought permission to seize documents pertaining to Plaintiff's involvement with the Atheists of Florida, and it constituted an overbroad, general warrant allowing Defendant to rifle through Plaintiff's personal belongings and seize items pertaining to litigation and other communicative materials protected by the First Amendment.[8]  As such, Defendant Judd violated Plaintiff's Fourth Amendment rights by relying on a facially defective warrant sought for an improper purpose, and used to further a campaign of retaliatory actions against Plaintiff.

25.     The Complaint Affidavit relating to the UPL Action was largely based on the statements and/or interviews of three witnesses:  (1) Ann Gibson, Legal Affairs Director for the Polk County Sheriff's Department; (2) Gow Fields, Mayor of the City of Lakeland; and (3) Stacy Butterfield, member of the Board of Directors of the Lake Victoria Homeowners Association (which is the neighborhood where Plaintiff resides).  According to the Complaint Affidavit, Butterfield is employed by the local Court Clerk's office.

---

[7] Read literally, § 454.23, *Fla. Stat.* (2010) could apply to a broad range of conduct that clearly does not constitute the unauthorized practice of law, such as merely teaching a business law class in high school.

[8] In the course of the unconstitutional search, investigators seized a safe from Plaintiff's home that she, at the time, shared with another individual.  Ultimately, Defendant Judd's agents forced open the safe and found approximately two grams of cannabis and a pipe belonging to her former roommate.  As a result, on or about May 24, 2011, Plaintiff Wachs was charged with misdemeanor possession of cannabis and drug paraphernalia arising from this illegal seizure.

26.     Gibson's and Fields' "impressions" that Plaintiff was a licensed and practicing attorney were allegedly based on Plaintiff's work with the Atheists of Florida organization, as described above.

27.     Butterfield's "impression" that Plaintiff Wachs was a licensed and practicing attorney allegedly came from circumstances surrounding a lawn dispute in which Plaintiff Wachs allegedly indicated that she "was an attorney."[9]

28.     Despite the fact that none of the witnesses' statements in the Complaint Affidavit indicated that they thought Plaintiff was holding herself out to be qualified to practice law *in this state*, the signatory to the Complaint Affidavit, law enforcement reached the unwarranted conclusion that it was apparent that the witnesses "could have easily thought that [Plaintiff] was an active and practicing attorney *in the State of Florida*" (emphasis added).

29.     Witnesses Butterfield and Fields, along with Defendant Judd, are on the Board of Directors of Polk Vision, Inc., "a broad, community-led partnership of organizations, businesses, government and individuals acting collectively to ensure implementation of Polk County's community vision."  Upon information and belief, and as described below, Plaintiff's viewpoint on religion and the First Amendment does not fit within "Polk County's community vision."  As a result, Defendant Judd conspired with Fields, Butterfield and Doe Defendants, in order to ensure the establishment of an Atheist-free Polk County, beginning with the persecution of Plaintiff Wachs.

30.     Plaintiff's arrest in the UPL Action, has caused substantial interruption of her online jewelry business, significant emotional stress and associated flare-up of her Multiple Sclerosis symptoms, and substantial damage to her reputation in the community.

31.     Plaintiff's arrest in connection with the UPL Action have been criticized by many

---

[9] As noted, Plaintiff is a retired attorney.

in the community, including an editorial in the local paper, which referred to the case as a persecution based on her Atheist beliefs that "smacks of retribution in favor of Polk's political class."[10]   Other media outlets and legal scholars have called the prosecution a "silly distraction"[11] and "highly disturbing," which, in the context of Plaintiff's "unpopular exercise of free speech," "raises flags of retaliatory action."[12]

### D.  The Second Retaliatory Arrest

32.     On Sunday, May 1, 2011, Defendant Judd escalated his crusade against Plaintiff by arresting her yet again; this time based solely on *spoken words* emanating from her home.  On March 13, 2011, Defendant Judd's deputies were present at home of Mr. Otto Lehman ("Lehman"), a neighbor of Plaintiff Wachs.   Based on information and belief, these law enforcement agents sought to orchestrate a dispute between Lehman and Plaintiff Wachs, to use as a basis for future criminal charges. As a result of events of March 13, 2011, Defendant Judd, without probable cause, and in retaliation for her beliefs and expressive activities referenced above, arrested Plaintiff Wachs on charges of "simulation of a sexual act in the presence of a child" purportedly in violation of § 800.04(7), *Fla. Stat.* (2010) ("the Lehman Action").   The arrest based solely on alleged erotic "moans" or words spoken by Plaintiff Wachs in her own home, which were allegedly overheard by Lehman's minor child. The Complaint Affidavit and other records related to the Lehman Action are attached as Composite Exhibit B.

33.     Prior to the arrest, as a result of Lehman's dislike for Plaintiff Wachs and her beliefs, Lehman sought a civil injunction preventing Plaintiff from contacting him.  Notably, the

---

[10] *See* Glenn Marston, "Official's Should Ignore Atheist's 'Esq.'," *TheLedger.com*, April 24, 2011.  Available at http://www.theledger.com/article/20110424/COLUMNISTS0308/104245006?p=4&tc=pg.

[11] *See* Kemp Brinson, "Charges Against Atheists' Leader a Distraction," *Polk Law Blog,* April 6, 2011.  Available at http://www.polklawblog.com/archives/charges-against-atheists-leader-a-distraction.

[12] *See* Jonathan Turley, "Florida Prosecutors Charge Leading Atheist Advocate With Unauthorized Practice of Law Due to the Use of Esquire," *Jonathan Turley blog*, April 1, 2011.   Available at: http://jonathanturley.org/2011/04/01/florida-prosecutors-charge-leading-atheist-advocate-with-unauthorized-practice-of-law-due-to-the-use-of-esquire/.

first sentence of Lehman's petition for injunction tellingly referenced the Atheists of Florida and characterized Plaintiff as "anti-Christian." A civil injunction hearing occurred on April 26, 2011. Due to Lehman's failure to serve Plaintiff with proper notice of the hearing, the judge reset the hearing date and advised that Plaintiff must be formally served first. Inexplicably, one or more representatives from Defendant Judd's office decided to attend this routine civil injunction hearing. Defendant Judd's representative, Detective Eric Daniel, informed the Assistant State Attorney Bradford H. Copley ("ASA") that he was at the courthouse for the hearing. Seizing the opportunity to continue his campaign of harassment against Plaintiff, Defendant Judd's agents, in consort with Doe Defendants, immediately arranged a meeting with Lehman and his wife after the hearing, in the attempt to generate some potential basis for additional persecution of Plaintiff, by misusing the state criminal law enforcement process.

34.     After being escorted to the ASA's office, the ASA and Defendant Judd's agents then interviewed Lehman in an effort to uncover facts relating to the incident to support their campaign of harassment. According to the probable cause affidavit in the Lehman Action, Lehman and Lehman's son allegedly heard Plaintiff make "sexual sounds" from an open window in Plaintiff's house. The affidavit clearly indicated that it was Lehman who thought the sounds were "sexual sounds," while Lehman's minor son thought the sounds indicated that Plaintiff "was being injured." Based on these "sounds" and Lehman's dislike of and desire to silence Plaintiff's minority viewpoint, Defendant Judd came to the preposterous conclusion that Plaintiff had committed the felony offense of lewd or lascivious exhibition in the presence of a victim who is less than 16 years of age, allegedly in violation of § 800.04(7) *Fla. Stat.* (2010).

35.     As with the UPL Action, the public was outraged at such an obvious attempt to continue Defendants' campaign of censoring, retaliating and discriminating against Plaintiff

based on her beliefs and the viewpoint of her speech. National media outlets covered the story, and legal scholars cautioned that "Meg Ryan should stay clear of Florida."[13] The local paper included articles and published letters calling the arrests "trumped up,"[14] "scary,"[15] "extreme,"[16] and "Gestapo-like,"[17] and called on officials to withdraw these "acts of retribution."[18] While much of the media coverage of this event has humorously focused on the absurdity of such an arrest, the constitutional implications are anything but humorous.

36.    But for Plaintiff's minority viewpoint and beliefs at odds with those of the Defendants, she never would have been arrested in the Lehman Action. While Polk County does have a reputation as a conservative community, Plaintiff is skeptical that Defendant Judd and his agents routinely cruise neighborhoods at night listening for moaning sounds drifting out of open windows in an attempt to protect children from such allegedly lewd and lascivious conduct. Rather, Plaintiff firmly believes that she was arrested not for alleged "sexual sounds," but because Defendants' censorial think-tank crafted yet another opportunity to arrest and silence a vocal Atheist, even if Plaintiff Wachs would ultimately succeed in winning the criminal case on the merits.

37.    Unless otherwise noted, all actions, omissions, and statements attributed to the Defendants were undertaken in their official capacity, following established policy, practice, and procedure of Defendants. Unless otherwise noted, all actions taken by Defendant Judd are

---

[13] *See* Jonathan Turley, "I'll Have What She's Having: Leading Atheist Arrested For Making Sexual Noises," *Jonathan Turley blog,* May 11, 2011. Available at: http://jonathanturley.org/2011/05/11/ill-have-what-shes-having-leading-atheist-arrested-for-making-sexual-noises/.
[14] "Second Arrest For Atheist: Bill of Rights Not for Polk," *TheLedger.com,* May 6, 2011. Available at: http://www.theledger.com/article/20110506/NEWS/110509576?p=2&tc=pg&tc=ar
[15] Carol Corley, Letter to the Editor, " Raid on Atheist Leader Scary," *TheLedger.com,* May 2, 2011. Available at: http://www.theledger.com/article/20110502/EDIT02/110509894?tc=ar
[16] David N. Reifsnyder, M.D., Letter to the Editor, "Treatment of Atheist Extreme," *TheLedger.com,* May 16, 2011. Available at: .http://www.theledger.com/article/20110516/EDIT02/110519624?tc=ar
[17] *Id.*
[18] "Second Arrest For Atheist: Bill of Rights Not for Polk," *supra.*

intended to include his agents, employees, officials and deputies.

38.     All conditions precedent to the bringing of this action have been performed, waived, or excused.

39.     Plaintiff has hired undersigned counsel to prosecute this action, and has incurred attorneys' fees in connection therewith.

### E.  Legal Allegations

40.     Upon information and belief, the investigation into Plaintiff Wachs' status as a member of the Florida Bar was initiated not out of a desire to protect the public from an imposter attempting to engage in the unlicensed "practice of law," but, rather, because of Wachs' involvement with the Atheists of Florida, her status as a plaintiff in litigation initiated by that organization, and her investigation into the donation of publicly-funded basketball equipment to religious organizations.

41.     Defendant Judd conspired with others, including Doe Defendants, to contrive and initiate the unwarranted UPL Action against Plaintiff in bad faith retaliation for her exercise of rights guaranteed to Plaintiff under the First and Fourteenth Amendments to the U.S. Constitution.

42.     Similarly, The Lehman Action was instituted not out of a desire to protect children from sexual abuse or to otherwise legitimately enforce Florida's criminal laws, but rather to harass, intimidate, silence, and punish Plaintiff as a result of her outspoken Atheist beliefs and activities. Defendant Judd conspired with others, including Doe Defendants, to contrive and initiate the UPL Action and the Lehman Action against Plaintiff in bad faith retaliation for her exercise of rights guaranteed to Plaintiff under the First and Fourteenth Amendments to the U.S. Constitution.

43.     Both the UPL Action and the Lehman Action were initiated by Defendants, alone or in consort with each other, based on an illegal motivation and for the improper purpose of punishing Plaintiff for her beliefs, and intimidating her into silence on issues of public concern.

44.     Defendant Judd, with agreement and assistance from Doe Defendants, conspired against Plaintiff by planning and setting in motion the UPL and Lehman Actions with assistance from private citizens who, by nature of their joint participation with Defendant Judd, were acting under color of state law.

45.     The state criminal courts are not sufficiently protective of Plaintiff's constitutional rights, as evidenced by the fact that she has already been held repeatedly in jail on unwarranted and retaliatory criminal charges, until securing a bond in each case.  The state courts have no effective ability to provide the necessary relief putting an end to Defendant Judd's misuse of the state criminal system to repeatedly arrest Plaintiff on frivolous criminal charges, thereby resulting in revocation of pretrial bonds posted in already-filed cases, and additional periods of illegal incarceration – potentially without the ability to obtain a future pretrial release bond.

46.     The federal courts are uniquely suited for protecting and enforcing constitutional guarantees, and preventing future violations of Plaintiff's civil rights.

47.     Absent intervention by this Court in the form of injunctive relief, Plaintiff is in genuine fear that Defendant Judd will continue to arrest her again and again, and repeatedly punish her through periods of pretrial incarceration and exorbitant bond expenditures, until she is rendered indigent and unable to continue defending herself and asserting her constitutional rights.

48.     Given the outrageous and unsupported allegations leveled against her in the UPL Action and the Lehman Action, Plaintiff is in genuine fear for her safety should she be arrested

and incarcerated again, as a result of the actions of Defendants' agents and/or other inmates, during periods of incarceration.

49.     Plaintiff has a right to be free from unwarranted, repeated abuse of the state criminal system by Defendants, under the First and Fourteenth Amendments to the U.S. Constitution.

*I. Deprivation of First and Fourteenth Amendment Right to Freedom of Speech*

50.     Defendant Judd's conduct in effectuating the search warrant in the UPL Action was an attempt to silence Plaintiff's speech both in public forums and in retaliation for Plaintiff's involvement in petitioning this Court for redress in litigation initiated by the Atheists of Florida, and her questioning of Judd's donation of the basketball hoops.

51.     Defendant Judd's conduct in investigating and arresting Plaintiff in connection with the UPL and Lehman Actions is part of a larger bad faith retaliatory scheme by Defendants to cause a prior restraint upon Plaintiff's constitutionally protected speech and is based on Defendants' objections to Plaintiff's viewpoint and the content of her speech.

52.     Irrespective of the individual validity of any given state criminal prosecution against Plaintiff, the sum total of the actions taken against her constitute a bad faith prosecution by Defendants in retaliation for her beliefs and expressive activities.

53.     Plaintiff's speech, expression and advocacy relating to her Atheist beliefs are well within the ambit of protected speech under the First and Fourteenth Amendments.

54.     The UPL and Lehman Actions were initiated with bad faith motivation, as the goals are to send a chilling message to others who wish to engage in First Amendment freedoms and rights in Polk County that they also may be subjected to prosecution for their beliefs. Contrary to Defendant Judd's assertion that "If there is no God, why do they care?," Plaintiff is

deeply concerned about co-mingling of religion and government pursued by Defendants.

55.     Defendants have deprived Plaintiff Wachs of the First and Fourteenth Amendment rights of freedom of speech, assembly and association in violation of the U.S. Constitution and 42 U.S.C. § 1983

### II.  Violation of the Establishment Clause of the First Amendment

56.     Defendants' conduct attempts to thwart Plaintiff's efforts, both individually and as a representative of the Atheists of Florida, to ensure that Polk County government officials not prefer one religion over another.

57.     Defendants' conduct has resulted in an excessive entanglement of religious and governmental activities.

58.     Defendants' conduct seeks to advance specific religious activities in Polk County, Florida, and silence critics of governmental involvement in religious activities, such as Plaintiff.

59.     Defendants' conduct with respect to Plaintiff Wachs violates the Establishment Clause of the First Amendment made applicable to the states through the Fourteenth Amendment, in violation of the U.S. Constitution and 42 U.S.C. § 1983.

### III.  Deprivation of Fifth and Fourteenth Amendment Equal Protection Rights

60.     Plaintiff is a class of one for purposes of equal protection.

61.     Plaintiff, as a Polk County resident, is being treated differently than any other resident, with regard to the enforcement of the state's criminal laws, in that she is being investigated and arrested for conduct that nobody else would be under similar circumstances. Defendant Judd is exercising his discretion in such a way as to single her out for investigations and arrests for alleged unlicensed practice of law and lewd acts, in retaliation for 1) her Atheist beliefs and 2) her investigation of the Defendant Judd's unconstitutional conduct.

62.     Defendant Judd, including Doe Defendants jointly participating with him, acting under color of state law, deprived Plaintiff of her right to equal protection under the laws by treating her differently than other citizens similarly situated based on her religious beliefs and the viewpoint of her speech.

63.     No rational basis existed for the differential and discriminatory treatment afforded to Plaintiff Wachs by Defendants.

64.     Defendant Judd, on his own or in consort with the Doe Defendants, has maliciously sought to misuse his position of power to effectuate a *de facto* prior restraint on Plaintiff's speech and expressive conduct though a campaign of harassment and retaliation in the hopes of winning a war of attrition until Plaintiff is no longer in a financial position to vindicate her rights in court.

65.     Defendants' acts have been for a discriminatory and unconstitutional purpose.

66.     The discriminatory treatment of Plaintiff Wachs by Defendants was intentional and arbitrary.

67.     Defendants have deprived Plaintiff Wachs of the guaranty to Equal Protection in violation of the U.S. Constitution and 42 U.S.C. § 1983.

### *IV.  Deprivation of Fifth and Fourteenth Amendment Due Process Rights*

68.     Defendants' conduct toward Plaintiff, as alleged above and including but not limited to the investigations and arrests in the UPL and Lehman Actions, has resulted in an improper deprivation of Plaintiff's liberty as provided under the Bill of Rights.

69.     By using improper acts of intimidation, harassment, and discrimination, Defendants have deprived Plaintiff of her First Amendment rights, including those rights related to free speech and the establishment of religion, without due process as required under the law.

70.     Defendants have deprived Plaintiff Wachs of the guaranty to Equal Protection in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983.

## NEED FOR RELIEF

71.     Plaintiff is faced with irreparable injury in the form of censorship of her constitutionally-protected speech and expression and her illegal incarceration in retaliation for her beliefs and her investigation of unconstitutional activity by Defendants.

72.     In the absence of prospective injunctive relief by this Court, Defendants would be free to continue their pattern of bad faith unconstitutional conduct toward Plaintiff Wachs in the future.

73.     Should this Court not enter an injunction as requested herein, Plaintiff is uncertain whether she will have the resources to contest the Defendants' unconstitutional onslaught, and she fears the Defendants will prevail through waging a war of attrition with threats of mounting criminal penalties.  The burden on Plaintiff in the absence of the requested relief therefore far outweighs the burden, if any, that Defendants would suffer.

74.     Defendants' actions have resulted and will continue to result in the denial of Plaintiff's constitutional rights of free expression, freedom of speech, due process and equal protection, and a chilling effect on the exercise of these rights by Plaintiff and all those similarly situated.  Accordingly, it is in the public interest to prevent these bad faith investigations, arrests, and citations from occurring in the future.

75.     Defendants' actions, conduct, and activities violate Plaintiff's rights of freedom of speech, freedom of expression, liberty, property, due process and equal protection under law as guaranteed by the United States Constitution and have deprived Plaintiff of the enjoyment and protection of those rights by color of state law, statute, custom, regulation, and/or usage.  These

deprivations are now occurring and will continue to occur in the future if not preliminarily and permanently enjoined by this Court.

76.     Defendants' actions were malicious, willful, wanton, and/or in reckless disregard of Plaintiff's constitutional rights.

77.     Plaintiff has no adequate remedy at law and will continue to suffer such irreparable harm and injury unless this Court grants preliminary and permanent injunctive relief. Plaintiff is in fear that, without such relief, Defendants will continue to proceed with their unlawful actions, including additional investigations, arrests, searches and seizures and interruption of Plaintiff's legitimate business, personal, and expressive activities, including but not limited to her work with the Atheists of Florida, that will cause Plaintiff to incur further expenses to defend against pending and future criminal prosecutions and institute appropriate and necessary appellate proceedings and other monetary damages.

78.     Plaintiff is unable to adequately litigate her federal constitutional claims in state court and is further unable to use the state criminal courts to seek a halt to the increasingly serious pattern of unconstitutional conduct aimed toward her by Defendants.  Plaintiff can only defend a single criminal case, one at a time, but cannot obtain a cessation of the bad faith campaign of harassment absent intervention by this Court.

79.     Plaintiff has a right not to face continued criminal investigations, arrests, complaints, or citations which are initiated for an improper, retaliatory, and bad faith purpose.

80.     Plaintiff has incurred considerable and significant legal costs and will continue to incur same in the future.

81.     Plaintiff has incurred and will continue to incur substantial attorneys' fees in the prosecution of this action, and this Court has jurisdiction to award Plaintiff such fees under 42

U.S.C. § 1988.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.      That judgment be entered finding in favor of Plaintiff on the claims set forth above;

B.      That the Court declare the rights of the Plaintiff, including without limitation a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, declaring, specifically, that Defendants' conduct, including their conduct in conspiring to execute and then executing the investigations, arrests, searches, and seizures in the UPL and Lehman Actions, denied Plaintiff her right to freedom of speech, freedom from religious favoritism and/or establishment, equal protection, and due process of the law under the United States Constitution;

C.      That the Court grant such further relief pursuant to 28 U.S.C. § 2202, as is necessary and proper under the circumstances;

D.      That the Court preliminarily and permanently enjoin Defendants from initiating and/or executing any and all future investigations and/or arrests of Plaintiff that violate Plaintiff's constitutional rights;

E.      That upon appropriate notice and hearings, the Court grant a permanent injunction prohibiting Defendants, their officers, employees, agents, successors, or assigns, and those persons in active concert or participation with them, from interfering with Plaintiff's First Amendment rights of free speech and association, and her Fourteenth Amendment rights to Due Process and Equal Protection of the law, and accordingly, that Defendants, and their agents, employees, servants, officers, attorneys, successors, assigns, and all others acting in concert or

participation with them be forthwith:

1) enjoined and restrained from interfering with the exercise of the Free Speech rights of Plaintiff and prohibited from taking any adverse action against Plaintiff for exercising her constitutional rights of Free Speech, Free Association, Due Process and Equal Protection of the law without discrimination as to the content or viewpoint of her speech;

2) enjoined to instruct, train, and brief all public employees, personnel, deputies, investigators, officials, and those persons in active concert or participation with Defendants, concerning the proper boundaries of citizens' rights under the First Amendment (including the Free Speech Clause and Establishment Clause) of the United States Constitution, and further, to implement appropriate policies, procedures, and protocols to supervise and train personnel to safeguard and protect those rights;

F.     That this Court retain continuing jurisdiction over this action and Defendant Judd, in addition to any Doe Defendants named in the future, to ensure that their campaign of intimidation and harassment ceases and is not re-initiated in the future;

G.     That Plaintiff be awarded reasonable attorneys' fees pursuant to 42 U.S.C § 1988, together with costs of this litigation; and

H.     That the Court grant such other and further relief as it may deem proper.

## **JURY TRIAL**

Plaintiff demands a jury trial on all matters so triable as a matter of right.

Dated this 23rd day of June, 2011.

WALTERS LAW GROUP

_____
Lawrence G. Walters
Florida Bar No.:776599
larry@firstamendment.com
Kevin W. Wimberly
Florida Bar No. 0057977
kevin@firstamendment.com
781 Douglas Ave.
Altamonte Springs, Florida 32714
(407) 975-9150 (phone)
(407) 774-6151 (fax)

Attorneys for Plaintiff