approved by Bred Copley NJA
3-3-11

## Application For Search Warrant

I, the undersigned affiant, hereby make this application for the issuance of a search warrant and, in support of this application, stated under oath as follows:

1. My name is: J. Eric Daniel

2. My place of residence is: Polk County, Florida

3. My occupation is: Detective/Deputy Sheriff.

4. The place to be searched is a private dwelling occupied as such and a weapon, instrumentality, or means by which a felony has been committed is contained therein and/or evidence relative to proving that a felony has been committed is contained therein. The felony involved is engaging in the unlawful practice of law, F.S.S. 454.23.

5. Attached hereto as an exhibit, and specifically made a part hereof, is a particular description of the property to be searched for and, if found, seized.

6. Attached hereto as an exhibit, and specifically made a part hereof, is a particular description of the place(s) and/or thing(s) to be searched.

7. The name of the person(s) who occupies said place is/are: EllenBeth Wachs and/or any/all John/Jane Does whose names are unknown to your affiant.

8. Attached hereto as an exhibit, and specifically made a part hereof, is a statement of the facts constituting probable cause for the issuance of a search warrant, which said facts affiant believe to be true.

_____
Affiant
Polk County Sheriff's Office Intelligence Unit

State of Florida
County of Polk

This day personally appeared before me, the undersigned authority duly authorized to administer oath, one J. Eric Daniel, who being by me first duly sworn, deposes and says that he is the person named as affiant in and who executed the above and foregoing Application for Search Warrant and the exhibits hereto and that each and every allegation contained in said Application for Search Warrant and the exhibits thereto is true and correct, except as to matters which are alleged on information and belief, and as to such matters he believes them to be true.

Dated this 3rd day of March, 2011.

_____
Judge of the Court Court,
In and for Polk County, Florida.

Barry W Bennett
Printed Name of Judge

PCSO Case # 2011-20085

**Search Warrant**

In the name of the State of Florida:

TO:
1. The Sheriff Grady Judd of Polk County Florida and his authorized deputies:
2. The State Attorney of the Tenth Judicial Circuit and his authorized investigators;

I, the undersigned Judge, do hereby certify that:

1. Application, attached as exhibit A, has this day been made to me for the issuance of a search warrant.
2. Said application is duly subscribed and sworn to.
3. Said application particularly describes:
   a. The thing(s) to be seized.
   b. The person(s), place(s), thing or things to be searched.
   c. The nature of the evidence to be obtained.
And sets forth the facts tending to establish the grounds of said application and the probable cause for believing that such grounds exist.
4. I have examined said application and proofs submitted to me and am satisfied that the probable cause exists for the issuing of the search warrant applied for.
5. The person(s), place(s), thing or things to be searched and the thing or things to be seized are described in the attachment hereto, which is hereby made a part hereof.

Now, therefore, you or either of you, with such lawful assistance as may be necessary, are hereby commanded, in the daytime, night time, or on Sunday as the exigencies of the situation may require:
   1. To search the afore-described place/ thing.
   2. To enter and search the afore-described, attached as, place the premises together with the yard and curtilage thereof, and any and all outbuildings and vehicles thereon, any persons residing therein and any other person thereon reasonably believed to be connected with said illegal activity for the property described in the attachment hereto and if the same or any part thereof, be found, you are hereby authorized to seize and secure same, giving proper receipt therefore and delivering a completed copy of this warrant to:
   1. To the individual from whose person the property was taken.
   2. To the person in charge of the premises or thing, or in the absence of any such person, leaving a completed copy where the property is found.

And making a return of your doings under this warrant within ten (10) days of the date hereof, and you are further directed to bring said property found and any person arrested in connection therewith, before the Court having jurisdiction of the offense.

WITNESS my hand and seal this 3rd day of March, 2011.

_____
Judge of the   Co u n t y   Court in and
for Polk County, Florida.

_____
Printed Name of Judge

## DESCRIPTION OF PROPERTY TO BE SEARCHED FOR

Any documents, whether in digital or hard copy form, either authored by EllenBeth Wachs, also known as EllenBeth Huey or EllenBeth Augsberger, or received by Wachs, in her capacity as Member, Legal Coordinator, Legal Director, Member of the Board of Directors, or Vice President of the corporate entity known as "Atheists of Florida, Inc," including but not limited to any memoranda, correspondence, or other communications authored by Wachs purporting to instruct on or to explain legal principles. This includes, but is not limited to, documents in any digital format such as .doc, .docx, .wpd, .rtf, or .pdf; electronic mail, either archived or saved to a computer's hard drive or removable digital media; HTML or .mht files, or any other electronic media consistent with creation of internet sites; internet message board postings; or archived video files, containing information regarding the unauthorized practice of law. Files generated by a computer's software, transparent to the user, that may indicate the sender(s) or receiver(s) of specific such files that may be located on the computer's hard drive or removable digital storage media. Computer files generated by the computer's software, and transparent to the user, that may indicate what files have been transferred to the computer or to removable digital storage media. Any computers and associated computer hardware, cameras, video cameras, scanners, printers, and other peripherals that can be used in conjunction with a computer; digital storage media including but not limited to cellular telephone(s) and their associated SIM cards or storage devices, CD-ROMs, DVD-ROMs, USB drives, or removable hard drives, that are capable of containing electronic correspondence or archived digital videos or digital photographs.

The forensic examination of a computer or digital media is a time consuming process. An examination can take several days or even weeks. Specialized hardware and software tools are needed to process such evidence. A controlled environment is required to prevent contamination or destruction of evidence. It is therefore necessary that any computers or digital storage media be removed from the location to be searched, and examined under controlled conditions.

PCSO Case # 2011-20085

## DESCRIPTION OF PLACE TO BE SEARCHED

The place to be searched is located at ████████████████████ Polk County, Florida.
The place to be searched is a single family, single story residence.

From the intersection of Highway 60 and Highway 37, Mulberry, Florida, travel north on
Highway 37 (also known as South Florida Avenue) for approximately 5.0 miles to the
intersection of Highway 37 and Fitzgerald Road, Lakeland, Florida. Turn right (east) and travel
east on Fitzgerald Road for approximately 0.4 miles to the intersection of Fitzgerald Road and
Francis Pipkin Road. Turn right (south) and travel south on Francis Pipkin Road for
approximately 0.2 miles to the intersection of Francis Pipkin Road and Woodhill Drive/Victoria
Square Lane. Continue straight and travel south on Victoria Square Lane and enter into the gated
subdivision to the intersection of Victoria Square Lane and Lake Victoria Drive. As Victoria
Square Lane makes a ninety degree curve the roadway turns into Lake Victoria Drive. Lake
Victoria Drive is a road which makes a complete loop. Continue south on Lake Victoria Drive
less than 0.1 miles and turn right onto Lake Victoria Drive (one end of the loop). Continue west
on Lake Victoria Drive and travel for less than 0.1 miles to the place to be searched. The place to
be searched has a physical address of ████████████████████████████████



The place to be searched is tan in color with white trim. The residence is located on the east side
of the road with the front door facing to the west. The numbers '████' appear horizontal above
the front door of the residence in gold. The numbers '████' appear in white, vertically, on a
black mailbox at the end of the residence's driveway.

*COPY*

1

## IN THE CIRCUIT/COUNTY COURT IN THE TENTH JUDICIAL CIRCUIT
## IN AND FOR POLK COUNTY, FLORIDA

**ARRESTING AGENCY/REPORT #:**
**DATE/TIME OF ARREST:**
**ARRESTING OFFICER:**
**PLACE OF ARREST:**

__ NOTICE TO APPEAR _X_ COMPLAINT AFFIDAVIT __ ARREST REPORT

**The undersigned affiant swears that she has just and reasonable grounds to believe that between June 15th, 2010 and February 22nd, 2011 at approximately N/A in the vicinity of POLK County, Florida**

Name (Last,First,MI): Wachs, EllenBeth
Address: ▮
R/S: W/F , Ht. 5'3" , Wt. 110 , Hair: Unk. , Eyes: Unk. , DOB: ▮
Soc. Sec#: ▮ Drivers Lic#: ▮
Marital Status: Single, Scars: Unk., Complexion: Fair
Occupation: Internet Sales    Employer: Self

Committed the Offenses of:
| | | | |
|---|---|---|---|
| 1. | Engaging in Unauthorized Practice of Law FSS: 454.23 | | Level/Degree: F-3 |
| 2. | | FSS: | Level/Degree: |
| 3. | | FSS: | Level/Degree: |
| 4. | | FSS: | Level/Degree: |

**PROBABLE CAUSE:**
"Your affiant (Michael J. Ivancevich) is a certified law enforcement officer with the State of Florida. Your affiant is currently assigned as an investigator with the Office of the State Attorney, Tenth Judicial Circuit, Bartow, FL, and has over 35 years of law enforcement experience in the State of Florida.

On March 1, 2011, your affiant was instructed by Assistant State Attorney Bradford Copley of the Tenth Judicial Circuit to investigate allegations that suspect EllenBeth Wachs, also known as EllenBeth Huey and EllenBeth Augsberger, had been engaging in the unauthorized practice of law in the State of Florida.

Investigation revealed that Ms. Wachs was admitted as an attorney in the State of Pennsylvania in 1993. The Disciplinary Board of the Supreme Court of Pennsylvania lists her as retired. Investigation indicated that Ms. Wachs retired from the Pennsylvania Bar in approximately 1997. According to the Board's website at http://www.padisciplinaryboard.org/faqs/attorneys.php#attorney, a "retired" attorney is inactive, and thus not eligible to practice law in the State of Pennsylvania. Your affiant also checked the registry of attorneys of The Florida Bar, at their website at http://www.floridabar.org/names.nsf/MFSearchDK?OpenForm, and learned that Ms.

2

Wachs is not now nor has she ever been a member of The Florida Bar and is not licensed to practice law.

The Florida Bar is the agency charged with regulation of the legal profession in the State of Florida, and practicing attorneys are required to be members. Your affiant learned that The Florida Bar defines a "nonlawyer" as a person who is not a member of The Florida Bar. *See Rules Regulating The Florida Bar*, Rule 10-2.1(c). "This includes, but is not limited to, lawyers admitted in other jurisdictions, law students, law graduates, applicants to The Florida Bar, disbarred lawyers, and lawyers who have resigned from The Florida Bar." *Id.* Nonlawyers may not practice law in the State of Florida. Ms. Wachs is a "nonlawyer" as The Florida Bar defines that term.

Between June 16, 2010 and February 14, 2011, Ms. Wachs held herself out to be a licensed Florida attorney. She signed numerous formal letters, using the title "Esq." to refer to herself. This is a title typically used by attorneys in the United States to refer to themselves. The letters were legal in nature citing case law and giving opinions on the law. Those that received these communications were under the impression that Ms. Wachs is an actively practicing licensed Florida attorney. Additionally, these documents are on the letterhead of a Florida nonprofit corporation, known as "Atheists of Florida, Inc." (AoF), chartered under Section 501(c)(3) of the federal tax code. AoF was so chartered in 1992. The documents your affiant reviewed carry the AoF letterhead and list of its corporate staff. Of all the listed staff in the letterhead, Ms. Wachs is the only one referred to as "Esq." Ms. Wachs also uses the title "Esq." in these letters to refer to licensed Florida attorneys, to which copies of the letters are routed.

\* On 12-28, 2010 Atheists of Florida, Inc. sent a letter to Polk County Sheriff Grady Judd. The letter explained the organizations focus of advancing the constitutional principles of the complete separation of church and state, protecting the rights of atheists, agnostics and other non-believers.

The letter went on to state that it came to the attention of the organization that the Polk County Sheriff's office had directed that certain property, purchased and maintained by the county jail (including sporting equipment), is to be given to a number of local churches. The letter stated that this measure was a direct violation of the Florida and United States Constitutions. The letter stated that on behalf of the members of the organization they requested the Polk County Sheriff's office immediately cease and desist this unconstitutional practice.

The letter went on to define the Florida Constitution, Article I, Section 3. The First Amendment to the United States Constitution, which it stated was applicable to local governments under the Fourteenth Amendment.

The letter accused the Sheriff's actions as a violation of "established clauses" of the Florida and United States Constitution. The transfer of taxpayer property to churches is a preference of religion over non-religion, and a preference of recipient churches over other

churches and religions. The letter informed the Sheriff that there was no secular purpose of your office's policy and practice of specifically choosing to donate public property to churches. The donations of the property were to preferentially aid and advance the receiving churches. It stated that the policy and practice was an entanglement by the government with religion.

The letter stated that the Atheists of Florida was not expressing any view on the removal of the property from the jail, its only objection was limited to the transfer of taxpayer assets to directly benefit religious organizations.

The letter requested that the Sheriff's Office respond in writing within five (5) days indicating whether it will cease and desist its policy or practice of giving taxpayer funded property to religious institutions.

The letter was signed by EllenBeth Wachs, Legal Affairs Director. The letter was formally typed and written on letter-head with the Atheists of Florida Inc. seal, which listed the organizations address, e-mail address, phone number, naming of organization Officers, Board of Directors, Executive Director, and Legal Affairs Coordinator. The document was received by the Sheriff's Department on January 3, 2011 and received by the Sheriff's Department Office of Legal Affairs on January 5th, 2011. The letter listed the organization's Legal Affairs Coordinator as EllenBeth Wachs, Esq.

*A second letter was sent to the Polk County Sheriff's Department on January 4th, 2011. The letter was sent to the Freedom of Information Officer with the Polk County Sheriff's Office.

The letter followed the same formal letter-head format, seal, listing Officers, Board of Directors and the organization's Legal Affairs Coordinator. The letter was received by the Office of the Sheriff on January 7th, 2011.

The letter is sent pursuant to Article 1, Section 24 of the Florida Constitution and pursuant to Fla. Stat. 119.01 et seq., pursuant to which municipal records shall be open to public inspection.

The letter request copies of all public records relative to or concerning, the following:

1. The transfer or donations of basketball and or other sports equipment to Polk County churches that occurred during the month of December 2010, including but not limited to all authorizations, requests, evaluations, assessments, valuations, estimates, inventories, church site preparation materials, vehicle requisitions, records, minutes of meetings, personnel assignment records (whether deputies, corrections officers, inmates, or outside parties) and any other public regards regarding the donation of said municipal property and installations of said property on recipient property;

2. The selection of recipients for said basketball and or other sports equipment, including but not limited to all memoranda, inventories, notes, requests,

4

evaluations, approvals, communications, and any and all other documents related
to the selection of recipients of the property;

3. The initial purchase and installation at county jails of said basketball and or other
sports equipment by Polk County or any agent or agency thereof, including but
not limited to purchase orders, receipts, invoices, contracts, installation contracts,
bonds, custody receipts, service contracts, inventories, and any and all other
public records related to the initial purchase of said equipment;

4. Any and all initial policies, procedures, practices and other public records relating
to the process of determining whether municipal property ought to be sold or
donated, whether municipal property is obsolete or surplus, and any all other
public records concerning;

5. The requirements for the recording of property and for the periodic review of
property for inventory purposes as required in Fla. Stat. 274.01(2);

6. Any and all public records concerning any and all other donations of surplus or
obsolete property by the Polk County Sheriff's Department at any time in the last
five (5) years;

7. If all or part of any record is claimed to be exempt from disclosure, please state
the basis of the alleged applicable exemption and include the statutory citation to
an exemption created or afforded by statute and also state in writing and with
particularity the reasons for the conclusion that the record is exempt. Fla. Stat.
119.07 (2)(a).

The letter was signed by EllenBeth Wachs. Below her signature it is typed EllenBeth
Wachs, Esq.

*On February 14th, 2011, a third letter was sent to the Polk County Sheriff's
Department from the Atheists of Florida, Inc. The letter followed the same letter-head
format as the previous two letters, having the organization seal, address, e-mail
address, telephone number, organization Officers, Board of Directors, and Legal
Affairs Coordinator EllenBeth Wachs, Esq.

The letter was received by the Polk County Sheriff's Department on February 17th,
2011. The letter was addressed to Ann Gibson the Polk County Sheriff's Department
Legal Affairs Director. The letter is a follow up to the second letter sent to the Polk
County Sheriff's Department, which requested public records concerning basketball
equipment and or other sports equipment relating to the decision-making into and
actual transfer of the sports equipment at the county jail. The letter stated that
documents and information that were not included which were requested and further
information had come to light which necessitated this follow up request. The letter
stated that it will reiterate portions of the original request in addition to adding new
requests for other information.

The letter requested copies of all public records relative to or concerning, the
following not previously provided:

1. The transfer or donation of basketball and or other sports equipment to Polk County churches that occurred during the month of December 2010, including but not limited to all authorizations, requests, evaluations, assessments, valuations, estimates, inventories, church site preparation materials, vehicle requisition records, minutes of meetings, personnel assignment records, (whether Majors, deputies, corrections officers, inmates, or outside parties) and any other public records regarding the donation of said municipal property and installation of said property on recipient property. This request includes, but is not limited to, the personnel assignment and vehicle requisition records, during the three month planning stage of "The Basketball Goal Relocation Project" prior to the actual transfer of the equipment.

2. Internal department forms declaring specific equipment as obsolete;

3. Minutes of meetings, memoranda and or any other communication in any manner whatsoever that documents and memorializes Sheriff Judd's assertion that the "Basketball Goal Relocation Project" had been vetted by his legal department.

4. The criteria and or basis for the selection of recipients for said basketball and or other sports equipment, including but not limited to all memoranda, inventories, notes, requests, evaluations, approvals, communications, and any and all other documents related to the selection of recipients of the property;

5. Any correspondence, memoranda, notes, emails, letters, receipts, copies of checks, notations of monies received in relation to any donation received by the department in regard to the basketball Goal Relocation Project;

6. Any and all transcripts and or notes or memoranda of phone conversations with any organization or person in relation to the transfer of equipment;

7. If any or part is claimed to be exempt from disclosure, please state the basis of the alleged applicable exemption and include the statutory citation to an exemption created or afforded by statute and also state in writing ant with particularity the reason for the conclusion that the record is exempt. Fla. Stat. 119.07(2)(a).

The letter is signed by EllenBeth Wachs. Below her signature her name is typed as EllenBeth Wachs, Esq.

On February 16th, 2011 Assistant State Attorney Bradford Copley met with Ann Gibson Polk County Sheriff's Department Legal Affairs Director. ASA Copley obtained a sworn statement under oath from Ms. Gibson.

Ms. Gibson informed ASA. Copley that through her personal contacts with EllenBeth Wachs, she Ms. Gibson was under the impression that Ms. Wachs was a licensed practicing attorney. Ms. Gibson's impressions were based under a totality of circumstances such as: the manner in which the above described letters were written, Ms. Wachs spoke like an attorney citing statute and case law opinions, and the fact that Ms. Wachs informed Ms. Gibson that she was representing the atheist organization when personal contact was made.

*On March 2nd, 2011 your affiant obtained a sworn statement under oath from City of Lakeland Mayor Gow Fields. Mr. Fields has been representing the City of Lakeland for

the past 19 years, in the capacity as a City Commissioner and currently Mayor. Mayor Fields commonly has contact with licensed attorenies.

Mayor Fields informed me that in either March or April of 2010 he met personally with EllenBeth Wachs and Rob Curry. At the time of this meeting EllenBeth Wachs was a Director for the Atheists of Florida. Mr. Curry was an Executive Director for the organization. Mayor Fields informed me that based upon his contact with Ms. Wachs he felt that Ms. Wachs was a practicing licensed attorney.

The purpose of this meeting regarded the Atheists of Florida's position on the City of Lakeland having Christian clergy invited to perform what the atheist organization termed "religious rituals" at public meetings of the Lakeland City Commission. The Atheists stated in a letter to Mayor Fields dated March 15th, 2010 that the practice of pray at the open city commission meeting was an "outrage that we cannot ignore". The letter followed the same formal format as the letters that were sent to the Polk County Sheriff's Department regarding the donation of basketball goals and or sports equipment to various Polk County churches.

The letter stated Atheists of Florida view on prayer at the meeting and asked Mayor Fields to answer three (3) questions.

1. What exactly is the purpose in having official government prayer as an integral part of the Commission meetings?
2. Given the real prejudice experienced by atheists and non-christian religious minorities in Lakeland, why would you deliberately put ordinary, everyday citizens from a wide variety of backgrounds into the difficult position of having to take what amounts to a public test of religious conformity at City Hall?
3. Can you support a silent moment of reflection as a way to give each and every citizen the personal choice to pray or not (as they prefer), without singling anyone out as happens with current practice?

The letter to Mayor Fields ends: "We encourage you to carefully consider the implications of having the City of Lakeland arbitrarily single out atheists or anyone for this kind of exclusion, disrespect and threat of exposure to discrimination". The letter was signed by Rob Curry, Executive Director, Atheists of Florida.

Mr. Fields stated that both Ms. Wachs and Mr. Curry wanted invocation removed from the City Commission meeting agenda. Mr. Fields informed me that during midway into their conversation things got "pretty heated" between Mr. Fields, Mr. Curry, and Ms. Wachs. Both Mr. Curry and Ms. Wachs informed Mayor Fields that having a moment of invocation at the City Commission meeting was unconstitutional. It was at this point in the meeting that Ms. Wachs informed Mayor Fields that she should know because she is an attorney and that if he and the city did not comply with the request to remove prayer from the commission meeting they would sue the City of Lakeland. Ms. Wachs cited to Mayor Fields that the separation of church and state was in the constitution.

*On March 1st, 2011 Assistant State Attorney Bradford Copley and I met with Mrs. Stacy Butterfield at the State Office of the State Attorney in Bartow, Fl. Mrs. Butterfield was sworn in under oath by ASA Copley. Ms. Butterfield is a 3 year member of the Board of Directors for the Lake Victoria Homeowners Association. The Homeowners Association is based in Lakeland, Florida. The Lake Victoria subdivision is the same location in which Ms. Wachs maintains a residence and resides. Mrs Butterfield is employed by the local Court Cleck's office and commonly has contact with licensed attorneys.

Mrs. Butterfield stated that she was under the impression that Ms. Wachs was a licensed practicing attorney. I asked Mrs. Butterfield what gave her this impression. Mrs. Butterfield stated that it was based upon what Ms. Wachs informed her and that was that she Ms. Wachs was an attorney. Mrs. Butterfield stated that this information was received from Ms. Wachs about a year ago and was not sure if this occurred during one of the Homeowners Association meetings or not, but that the information came from Ms. Wachs herself.

Mrs. Butterfield stated that the Homeowners Association sent Ms. Wachs a letter in regard to the standards for yards in the neighborhood in which the yard of Ms. Wachs did not meet the standards of the association. Mrs. Butterfield sent Ms. Wachs a document in regards to the issue since Ms. Wachs said she was an attorney."

It is apparent to this investigator that based on the documents provided to me for my review, which were from Ms. Wachs as "Esq" to various witnesses mentioned in this affidavit, that those witnesses/recipients could have easily thought that she was an active and practicing attorney in the State of Florida.

(End SAI Ivancevich complaint affidavit)

---

**Victim/Witness**        **Address**                      **Phone**
**Victim: State of Florida**
**Witness: #1. Ann Gibson, Legal Affairs Director, Polk County Sheriff's**
**Department.**
**Witness: #2. Gow Fields, Mayor, City of Lakeland**
**Witness: #3. Stacy Butterfield,** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Investigating Agcy/Officer:** Office of the State Attorney, Investigator M. J. Ivancevich #14

**Sworn to and Subscribed before me,**
**The undersigned authority, this**
__3__ day of _March_ , 2011

**AFFIANT**

**Law Enforcement Officer**

IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, STATE OF FLORIDA

STATE OF FLORIDA                    CASE #:        **CF11-002981**

vs.

ELLENBETH WACHS, W/F, ███████

## DIRECT
## INFORMATION FOR:

1)    SIMULATION OF A SEXUAL ACT IN THE PRESENCE OF A CHILD

In the Name and by Authority of the State of Florida:

JERRY HILL, State Attorney for the Tenth Judicial Circuit, by and through his
undersigned Assistant State Attorney, charges that ELLENBETH WACHS on or
about March 13, 2011, in the County of Polk and State of Florida, did, while 18
years of age or older, in the presence of FL, a child under 16 years of age,
intentionally commit a sexual act not involving actual physical or sexual contact,
including but not limited to sadomasochistic abuse, sexual bestiality, or the
simulation of any act involving sexual activity, contrary to Florida Statute
800.04.(7) (2 FEL DEG) (LEVEL 5)

BRADFORD H COPLEY
FL. BAR NO.: 0437662
Assistant State Attorney
Polk County, Florida

STATE OF FLORIDA
COUNTY OF POLK

Appeared before me, BRADFORD H COPLEY, Assistant State Attorney for Polk County, Florida, personally known to me, who, being first duly sworn, says that the allegations as set forth in the foregoing information are based upon facts that have been sworn to as true, and which, if true, would constitute the offense therein charged, that this prosecution is instituted in good faith, and certifies that testimony under oath has been received from the material witness or witnesses for the offense.

_____
Assistant State Attorney

       Sworn to and subscribed to before me this 29TH day of APRIL , 2011.

_____
NOTARY PUBLIC, State of Florida



SHEILA D. TINDLE
MY COMMISSION # DD 910713
EXPIRES: September 25, 2013
Bonded Thru Budget Notary Services

**CO-DEFENDANT(S):**

| JUVENILE | ✓ ADULT | BOOKING # | | OBTS # | |

IN CIRCUIT/COUNTY COURT IN THE TENTH JUDICIAL CIRCUIT IN AND FOR POLK COUNTY, FL

SUBMITTING MEMBER   DETECTIVE ERIC DANIEL                        MEMBER #  5185V

| DATE/TIME OF ARREST/INCIDENT | 03/13/2011 | 08:45 | EVIDENCE COLLECTED | YES | NO | ✓ |

LOCATION OF INCIDENT

CROSS STREET

COMPLAINT AFFIDAVIT ✓    ARREST REPORT

CITY OF   COUNTY                        COUNTY OF POLK, STATE OF FLORIDA

THE UNDERSIGNED AFFIANT SWEARS SHE/HE HAS JUST AND REASONABLE GROUNDS TO BELIEVE THAT ON   03/13/2011   AT

APPROXIMATELY   08:45 AM   IN THE VICINITY OF   LAKELAND   , POLK COUNTY, FLORIDA

| WACHS | ELLEN | BETH | ALIAS |
| LAST | FIRST | MIDDLE | |

ADDRESS                        PHONE  UNKNOWN

| RACE   WHITE | SEX  FEMALE | DOB | HT  5-03 | WT  110 | EYE   BLUE | HAIR  BLOND |

| COMPLEXION  MEDIUM | BUILD  SLENDER | SPEECH  NORMAL | POB  PA |

SCARS/MARKS/TATTOOS                        MARITAL STATUS  SINGLE

| DL# | ST  FL | SS# | OCCUPATION  SELF |

EMPLOYER/SCHOOL                        PHONE

JUV-PARENTS                        PHONE

## PROBABLE CAUSE TO FOLLOW VICTIM/WITNESS INFORMATION

COMMITTED THE OFFENSE(s) OF:

| 1) SIMULATION OF A SEXUAL ACT IN THE PRESENCE OF A CHILD | FSS   800.04 (7) | LEVEL/DEGREE  F/2 |

| VICTIM: | OTTO LEHMAN | | |
| | NAME | ADDRESS | PHONE |

### IN CIRCUIT/COUNTY COURT IN THE TENTH JUDICIAL CIRCUIT
### IN AND FOR POLK COUNTY, FLORIDA

PROBABLE CAUSE:

ON 04/26/11, AT 0845 HOURS, I ATTENDED A HEARING FOR AN INJUNCTION FOR PROTECTION IN COURTROOM 6B AT THE POLK COUNTY COURTHOUSE, 255 NORTH BROADWAY AVENUE, BARTOW, FL. THE INJUNCTION HEARING WAS REQUESTED BY OTTO LEHMAN, PETITIONER, AGAINST ELLEN BETH WACHS, RESPONDENT. MR. LEHMAN HAD PREVIOUSLY CONTACTED THE POLK COUNTY SHERIFF'S OFFICE TO ALERT US ABOUT HIS CASE.  I HAD A PREVIOUS ENCOUNTER WITH WACHS DURING THE EXECUTION OF A SEARCH WARRANT, WHICH I AUTHORED, ON MARCH 3, 2011. MY PURPOSE FOR ATTENDING THE HEARING WAS TO DETERMINE IF ANY CRIMINAL ACTIONS HAD BEEN COMMITTED BY WACHS TO CAUSE LEHMAN TO PETITION FOR AN INJUNCTION. I MADE ASA B. COPLEY AWARE OF MY PRESENCE AT THE COURTHOUSE AND THE INJUNCTION CASE SINCE HE IS THE PROSECUTING ASSISTANT STATE ATTORNEY ON WACHS  PREVIOUS CASE.  UPON MAKING CONTACT WITH THE BAILIFF IN THE COURTROOM, I LEARNED WACHS HAD NOT BEEN SERVED WITH A NOTICE FOR THE HEARING. I ALSO DID NOT OBSERVE WACHS IN THE COURTROOM.

AFTER SPEAKING WITH ASA COPLEY HE ADVISED HE WOULD LIKE TO SPEAK WITH THE PETITIONER AND ME AFTER THE COURT HEARING. I OBSERVED AS THE  JUDGE CALLED LEHMAN'S COURT CASE AT WHICH TIME MR. LEHMAN WAS THE ONLY PERSON INVOLVED IN THE CASE TO RESPOND TO THE PODIUM.  THE JUDGE ADVISED MR. LEHMAN THE NEED FOR WACHS TO BE SERVED AND RESET THE COURT HEARING FOR MAY 17, 2011 AT 0845 HOURS TO PROVIDE TIME FOR WACHS TO BE SERVED. THE JUDGE TOLD LEHMAN THE HEARING COULD PROCEED ONLY IF AND WHEN WACHS WAS SERVED. LEHMAN TOLD THE JUDGE THAT HE HAD OBSERVED WACHS TO BE HOME WHEN THE PROCESS SERVER TRIED TO SERVE HER BUT WACHS WOULD NOT COME TO THE DOOR AND SHE HAS CONTINUED TO AVOID BEING SERVED WITH LEGAL PROCESS. AFTER MR. LEHMAN

| AFFIDAVIT CONTINUATION | Sheriff's |  | Office | FORM #9013A - Revised 01/08/83 |
|---|---|---|---|---|
| Agency ORI Number<br>FL05300000 | Polk County | | Bartow, FL | INCIDENT NUMBER<br>2011-038031 |

RECEIVED HIS COPY OF THE COURT PAPERWORK I ESCORTED HIM AND HIS FAMILY TO ASA COPLEY'S OFFICE IN ORDER TO INTERVIEW THEM.

WHILE IN ASA COPLEY'S OFFICE MR. AND MRS. LEHMAN IN MY PRESENCE WERE PLACED UNDER OATH. WHILE SPEAKING TO THE LEHMANS I REVIEWED THE COPY OF THE PETITION FOR INJUNCTION FOR PROTECTION AGAINST REPEAT VIOLENCE. INCLUDED IN THE PETITION I NOTED SEVERAL SIGNED STATEMENTS OF WITNESSES WHICH HAD BEEN PREPARED AND FILED WITH THE COURT DOCUMENTS.

FROM THE DOCUMENTS AND BY SPEAKING TO THE LEHMANS I LEARNED THAT ON OR ABOUT MARCH 13, 2011, AT APPROXIMATELY 0830 HOURS, THE LEHMAN'S YOUNGEST SON (IDENTIFIED AS F.L. - 10 YEAR OLD MALE) WENT OUTSIDE HIS RESIDENCE TO PLAY BASKETBALL. ONCE F.L. WENT OUTSIDE AND BEGAN TO PLAY, WACHS (WHO F.L. WAS ABLE TO IDENTIFY BASED ON NUMEROUS PREVIOUS ENCOUNTERS) YELLED AT F.L. TO STOP BECAUSE SHE WAS TRYING TO SLEEP. F.L. THEN WENT INSIDE AND TOLD MR. LEHMAN ABOUT WACHS YELLING AT HIM TO STOP PLAYING AT WHICH TIME MR. LEHMAN TOLD F.L. THAT HE HAD THE RIGHT TO PLAY BASKETBALL IN HIS YARD DURING THE DAY. THE 10 YEAR OLD WOULD NOT GO BACK OUTSIDE AS HE WAS FEARFUL OF WACHS BECAUSE OF PREVIOUS INAPPROPRIATE BEHAVIOR BY HER TOWARDS CHILDREN. MR. LEHMAN THEN ACCOMPANIED F.L. OUTSIDE TO PLAY BASKETBALL WITH HIM IN ORDER TO SHOW HIM IT WAS OKAY TO PLAY. THE TEN YEAR OLD WAS IN THE HOUSE FOR LESS THAN ONE MINUTE BEFORE GOING BACK OUTSIDE WITH HIS FATHER. ONCE OUTSIDE AND WHILE PLAYING BASKETBALL MR. LEHMAN AND F.L. BEGAN TO HEAR WACHS FROM THE SAME OPEN BEDROOM WINDOW WHICH SHE HAD MOMENTS EARLIER YELLED AT F.L. FROM. THIS TIME HOWEVER, WACHS WAS YELLING, "OH JOHN" OVER AND OVER AGAIN AND KEPT INCREASING IN VOLUME TILL IT WAS A LOUD SCREAM. MR. LEHMAN AT FIRST TOLD HIS SON TO IGNORE HER, BUT IT BECAME EVIDENT TO HIM THAT SHE WAS NOT GOING TO STOP UNTIL THEY WENT BACK INTO THEIR HOUSE. MR. LEHMAN STATED THE STATEMENTS WHICH WACHS WAS SAYING WERE ACCOMPANIED WITH A MOAN AND OTHER SEXUAL SOUNDS WHICH SOUNDED LIKE A WOMAN EXPERIENCING SEXUAL GRATIFICATION IN AN EXTREMELY VOCAL FASHION. MR. LEHMAN STATED WACHS CONTINUED HER SEXUAL OVERTONES UNTIL MR. LEHMAN AND HIS SON RETREATED INTO THEIR HOUSE. MR. LEHMAN STATED HIS SON, 10 YEAR OLD F.L., BEGAN TO QUESTION WHAT WACHS WAS DOING AND BECAME SCARED AND WORRIED AT WHAT MAY BE HAPPENING IN WACHS' HOME AND WHETHER SHE WAS BEING INJURED. MR. LEHMAN STATED AS A RESULT OF THE MOANING AND SEXUAL INFERENCES BEING MADE BY WACHS SIMULATING A SEXUAL ACT AND HIS SON'S REACTION TO IT, HE HAD NO CHOICE BUT TO GO INSIDE. MR. LEHMAN BELIEVES THIS WAS WACHS' GOAL AND PURPOSE FOR HER CRIMINAL BEHAVIOR TOWARD HIS 10 YEAR OLD SON.

MR. LEHMAN TOOK F.L. INSIDE AND ADVISED MRS. LEHAM ABOUT THE EVENTS WHICH HAD OCCURRED OUTSIDE. MR. AND MRS. LEHMAN STATED F.L. SEEMED CONCERNED ABOUT WHAT HAPPENED OUTSIDE AND ASKED SEVERAL QUESTIONS ABOUT WHY WACHS WAS MAKING SUCH NOISES. MRS. LEHMAN STATED SHE WAS VERY DISTRAUGHT OVER HER SON'S EMOTIONAL STATE AND AS SUCH STRUGGLED TO MAKE UP A QUICK EXCUSE TO COVER WACHS' ACTIONS. MR. AND MRS. LEHMAN 'S TEN YEAR OLD SON STILL REFUSES TO GO OUTSIDE TO PLAY BASKETBALL SINCE THIS INCIDENT. HE REMAINS SCARED OF WACHS AND AVOIDS HER AT ALL TIMES. F.L. DOES NOT HAVE FRIENDS OVER TO HIS HOUSE TO PLAY, NOT BECAUSE HE DOES NOT WANT TO BUT BECAUSE HIS FRIENDS HAVE DEALT WITH WACHS' VERBAL ABUSE AS WELL AND DO NOT WISH TO REPEAT THE EXPERIENCE.

ON APRIL 15, 2011, MR. LEHMAN'S OLDER SON, IDENTIFIED AS H.L. A 16 YEAR OLD MALE, WAS PRACTICING DRIVING A MANUAL TRANSMISSION VEHICLE ON THE LEHMAN'S INCLINED DRIVEWAY. AFTER H.L. HAD FINISHED PRACTICING HE WENT INSIDE HIS HOUSE BRIEFLY THEN RETURNED TO PLAY BASKETBALL. MR. LEHAM POINTED OUT THAT WACHS' VEHICLES ARE PARKED ON THE OPPOSITE SIDE OF THE HOUSE, HOWEVER, WACHS DECIDED TO DRIVE HER CORVETTE TO THE SIDE OF THE HOUSE CLOSEST TO THE LEHMAN'S ON THE GRASS WHERE THERE IS LIMITED AREA BETWEEN THE TWO RESIDENCES. H.L. ADVISED MR. LEHMAN THAT WACHS BEGAN ASKING QUESTIONS LOUDLY AS IF TO START A CONVERSATION WITH H.L. WHEN WACHS DID NOT GET A RESPONSE FROM H.L. SHE THEN AGAIN ASKED IN A LOUD GENERAL MANNER IF HE [H.L.] WAS ALLOWED TO TALK TO THEM (WACHS AND HER BOYFRIEND]. AT THIS TIME H.L. RESPONDED HE COULD SPEAK TO THEM HOWEVER HE CHOSE NOT TO. IT APPEARED TO H.L. THAT HIS STATEMENT ANGERED WACHS AS SHE THEN BEGAN TO MAKE STATEMENTS SUCH AS, "YOU'RE RUDE, YOU WEREN'T BROUGHT UP RIGHT", "THAT IS NO SURPRISE, YOUR FATHER IS A PRICK". WACHS CONTINUED TO MAKE STATEMENTS IN GENERAL, BUT LOUD ENOUGH FOR H.L. TO HEAR SUCH AS, "FUCKING EASTER IS STUPID" AND THAT CHRISTIANS ARE STUPID TO BELIEVE SUCH A "FUCKING SUPERSTITION" AS WELL AS HOW EASTER IS JUST

| AFFIDAVIT CONTINUATION | Sheriff's | | Office | FORM 49013A - Revised 01/28/03 |
| --- | --- | --- | --- | --- |
| Agency ORI Number FL05300000 | Polk County | | Bartow, FL | INCIDENT NUMBER 2011-038031 |

ABOUT SEX AND THAT IS WHY THE SYMBOL OF A RABBIT IS USED SINCE "RABBITS FUCK ALL THE TIME". WACHS THEN CONTINUED WITH HER RHETORIC AND IN RESPONSE TO NEIGHBORS EASTER DECORATIONS, STATED SHE NEEDS TO PUT ORGY SIGNS IN HER FRONT YARD AS WELL AS HANG CONDOMS FROM THE TREE. WACHS THEN MADE STATEMENTS ABOUT POLITICS AND RELIGIOUS VIEWS, ALL WHILE USING PROFANITY IN WHAT H.L. DESCRIBED AS 'IN ALMOST EVERY SENTENCE'. WACHS THEN MADE THE STATEMENT ABOUT H.L. LEARNING TO DRIVE AND HOW HARD COULD IT BE FOLLOWED BY "WELL YOU ARE THE BRAINWASHED ONE BUT THERE MAY STILL BE HOPE FOR THE YOUNGER ONE, EVERY TIME HE COMES OUT WE WILL GIVE HIM A LECTURE."

ON APRIL 26, 2011 IN ASSISTANT STATE ATTORNEY COPLEY'S OFFICE I ALSO LEARNED FROM MR. LEHMAN THAT HE HAD BROUGHT ADDITIONAL DOCUMENTATION AS PROOF IN HIS HEARING ABOUT WACHS' ATTITUDE AND ACTIONS TOWARDS OTHER CHILDREN WHICH SHOW A PATTERN OF EXTREME HOSTILITY AND IRRATIONAL RAGE. THE FOLLOWING IS A LETTER FROM ANOTHER FAMILY:

TO WHOM IT MAY CONCERN:
IN AUGUST OF 2010, MY FAMILY AND I VISITED THE HOME OF OTTO AND ANN LEHMAN FOR A DAY OF FISHING, SWIMMING AND SOCIALIZING. AFTER FISHING FOR A FEW HOURS OFF THE LEHMAN'S DOCK, MY 15 YEAR OLD DAUGHTER AND THE LEHMAN'S OLDEST SON, ACCIDENTALLY CAUGHT A HOOK ON SOME PLANT GROWTH IN THE LAKE. IN ORDER TO DISLODGE THE HOOK, MY DAUGHTER TOOK 2 STEPS ONTO MS. WACHS' PROPERTY. AT THIS POINT, MS. WACHS STORMED ONTO HER POOL DECK AREA YELLING AT THE CHILDREN TO GET OFF HER PROPERTY. SINCE SHE HAD ONLY TAKEN 2 STEPS ONTO THE NEIGHBOR'S PROPERTY, MY DAUGHTER WAS COMPLETELY SHOCKED AND FRIGHTENED BY MR. WACHS' OUTBURST AND FELT AS THROUGH MS. WACHS HAD BEEN WATCHING AND WAITING FOR THEM TO GO ON HER PROPERTY. THE LEHMAN'S SON APOLOGIZED FOR STEPPING ON HER PROPERTY BUT MS. WACHS PERSISTED WITH HER OUTBURST. AT THIS POINT, MY DAUGHTER CAME INSIDE AND THOUGH WE OFFERED TO ACCOMPANY HER BACK OUTSIDE, MY DAUGHTER ADAMANTLY REFUSED TO RETURN TO THE DOCK, THUS ENDING AN ENJOYABLE TIME SHE HAD FISHING THAT DAY.

BASED ON THE ABOVE PATTERN OF BEHAVIOR BY WACHS IN RELATION TO CHILDREN AND THE PARTICULAR CIRCUMSTANCES OF MARCH 13, 2011 IT IS EVIDENT THAT SHE INTENTIONALLY SIMULATED AN ACT INVOLVING SEXUAL ACTIVITY IN ORDER TO ACHIEVE HER GOAL OF EMBARRASSING THE FATHER AND STOPPING THE BOY FROM PLAYING BASKETBALL IN VIOLATION OF F.S.S. 800.04(7).

SWORN TO AND SUBSCRIBED BEFORE ME, THE UNDERSIGNED AUTHORITY, THIS __29__ DAY OF __APRIL__ 20 _11_

Det James Trudo  6332                              Det _____ 5785
DEPUTY CLERK/NOTARY PUBLIC, SO                                        AFFIANT

____ PERSONALLY KNOWN        ____ PRODUCED ID        ID TYPE _____

____ NO BILL/PETITION        ____ PROSECUTION APPROVED _____

                                                    ASSISTANT STATE ATTORNEY